UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FIRST CLASS TIRE SHREDDERS, INC.,

      Plaintiff,                                    Case Number 16-10930

v.                                                       Honorable David M. Lawson

EMPLOYERS MUTUAL CASUALTY CO.,

      Defendant.
_____/

**OPINION AND ORDER GRANTING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, AND DISMISSING COMPLAINT**

The parties have filed cross motions for summary judgment in this insurance coverage dispute. They agree on many of the essential facts. The plaintiff argues that the property insurance policy (insuring "contractors' equipment" against theft, among other things) issued to it by the defendant covered a one-off, custom-built car crusher that disappeared from a storage location, and the defendant's refusal to pay the loss breaches the insurance contract. The defendant argues that the policy's "missing property" exclusion absolves it from having to pay for the loss. The Court heard oral argument on the motions on December 14, 2016. The defendant has the better argument. The undisputed facts of the case fit within the plain language of the "missing property" exclusion, and the loss of the equipment, therefore, is excluded from coverage under the insurance policy. The defendant's motion for summary judgment will be granted in part, the plaintiff's motion for summary judgment will be denied, and the complaint will be dismissed.

I.

The basic facts of the case are undisputed. Plaintiff First Class Tire Shredders, Inc. operates a facility in Flint, Michigan. The plaintiff's main business is collecting and shredding used tires.

The owner of First Class Tire Shredders, Harry Powell, started the company more than 20 years ago. He also previously owned several other businesses, including one named First Class Homes, which operated from offices at the same location as the tire shredding company.

In 2008, Powell constructed a mobile car crusher of his own design that was built onto a 50-foot semi-truck trailer. The crusher took about a year to build, and it originally was built by Powell for use by First Class Homes. When it was finished, the crusher measured approximately 50 feet long and stood 17 feet tall.

Defendant Employers Mutual Casualty Company (EMC) issued a business insurance policy to First Class Tire Shredders, effective from July 3, 2011 through July 3, 2012, which insured against, among other things, "direct physical loss" of "contractors' equipment," including certain items listed on a schedule attached to the policy. The crusher was listed on a schedule of covered items as "Mobile Car Crusher," with a scheduled value of $100,000. The policy states that it covers "scheduled equipment" that is subject to a "direct physical loss caused by a covered peril," including "contractors' equipment," unless the "property is excluded or subject to limitations." The policy also includes a "missing property" exclusion, which states:

> "We" do not pay for missing property where the only proof of loss is unexplained or mysterious disappearance of covered property, or shortage of property discovered on taking inventory, or any other instance where there is no physical evidence to show what happened to the covered property.

At some point, after Powell closed his First Class Homes business and the crusher was not in regular use, it was moved from the First Class commercial property to a storage yard at Junk Iron & Metal, which is a salvage business operated by Powell's friend, Donald Sampson. The crusher was stored there for several years.

On June 1, 2012, Powell sent one of his employees, Rex Moore, to retrieve the crusher from the Junk Iron facility. However, when Moore arrived, he could not find the crusher in the area where it had been kept (apparently in a space beside Sampson's residence on the lot). Moore noted that a new gravel parking lot had been constructed in the area where the crusher was stored. He searched the salvage yard and two adjacent storage facilities also operated by Sampson, but could not find the crusher anywhere. Powell called Sampson and asked where the crusher was, and Sampson said that as far as he knew it was in the usual place where it had been kept. Sampson could not explain how the crusher might have moved or where it was. Sampson, it appears, was not deposed, but Powell testified that Sampson said he was not around when the crusher was moved.

On June 1, 2012, Powell submitted a claim to EMC for the missing crusher, claiming a loss for the full scheduled value of $100,000. EMC responded and asked for certain documents evidencing the ownership interest in the crusher, such as a proof of title or registration for the trailer, any tax returns disclosing ownership of the crusher as a business asset, and any other invoices or documents related to its acquisition or ownership. EMC also asked Powell to submit a signed statement in proof of loss in support of his claim. Powell then submitted a number of documents, which EMC determined were not satisfactory to show that the First Class Tire Shredders, Inc. entity owned or had spent any funds to build or acquire the crusher, or that the insurable value of the crusher, if any, was as much as Powell claimed. EMC also asserts that Powell never has produced any "physical evidence" to show what happened to the crusher, and that the loss therefore is excluded under the "missing property" provision. On March 22, 2013, EMC denied Powell's claim for the loss of the crusher. This lawsuit followed.

On February 11, 2016, First Class filed a one-count complaint in the Genesee County, Michigan circuit court alleging that EMC breached the contract of insurance by refusing to pay for the covered loss of the crusher. On March 15, 2016, EMC removed the case to this Court. Discovery closed on August 31, 2016, and the parties filed their cross motions for summary judgment thereafter.

II.

Defendant EMC contends that it is not liable for any breach of the policy's terms, because coverage for any alleged loss of the crusher is excluded by the "missing property" provision of the policy, where the plaintiff has failed to produce any "physical evidence" to show what happened to the crusher. The defendant also argues that coverage of the crusher was voided by a number of alleged "misrepresentations" by Powell about the machine, and that the policy ought to be cancelled outright. However, the record does not establish EMC's entitlement to relief on its second argument as a matter of law, because First Class Tire Shredders has offered sufficient evidence to rebut them. On the issue of the applicability of the "missing property" provision, however, the only question is whether the undisputed facts trigger that exclusion.

The fact that the parties have filed cross motions for summary judgment does not automatically justify the conclusion that there are no facts in dispute. *Parks v. LaFace Records,* 329 F.3d 437, 444 (6th Cir. 2003) ("The fact that the parties have filed cross-motions for summary judgment does not mean, of course, that summary judgment for one side or the other is necessarily appropriate."). However, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A trial is required only when "there are any genuine factual issues that

properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986). The parties have not seriously contested the basic facts of the case on the application of the policy exclusion. Where, as here, the material facts are mostly settled, and the question before the court is purely a legal one, the summary judgment procedure is well suited for resolution of the case. *See Cincom Sys., Inc. v. Novelis Corp.,* 581 F.3d 431, 435 (6th Cir. 2009).

The plaintiff's claim is for breach of contract under Michigan law. Because this is a diversity action, the Court must follow Michigan substantive law, as prescribed by the state's highest court. *Erie R.R. v. Tompkins*, 304 U.S. 64 (1938). If the Michigan Supreme Court has not addressed a determinative point of law, this Court "must predict how it would resolve the issue from 'all relevant data.'" *Kingsley Associates, Inc. v. Moll PlastiCrafters, Inc.*, 65 F.3d 498, 507 (6th Cir. 1995) (citing *Bailey v. V. & O Press Co., Inc.*, 770 F.2d 601, 604 (6th Cir. 1985)). "Relevant data include decisions of the state appellate courts, and those decisions should not be disregarded unless we are presented with persuasive data that the Michigan Supreme Court would decide otherwise." *Ibid.* (citing *FL Aerospace v. Aetna Casualty and Surety Co.*, 897 F.2d 214, 218-19 (6th Cir. 1990)).

The allocation of the burdens of proof in a case involving the breach of an insurance contract is well settled under Michigan law. The insured bears the burden of establishing coverage under the policy and the insurer's breach. *Hunt v. Dreilick*, 496 Mich. 366, 373, 852 N.W.2d 562, 565 (2014). The insurer bears the burden of proving that coverage is negated by a policy exclusion. *Ibid.* "[E]xclusionary clauses in insurance policies are strictly construed in favor of the insured." *Ibid.* (quoting *Auto-Owners Ins. Co. v. Churchman*, 440 Mich. 560, 567, 489 N.W.2d 431, 434 (1992)).

The parties do not dispute that a valid contract of insurance was in force when the plaintiff submitted its claim, that the policy at least nominally covered the crusher, and that — if the exclusion and misrepresentation defenses did not apply — the loss of the crusher due to theft would be a covered peril under the policy. As noted earlier, however, the defendant argues that the plaintiff has not produced any "physical evidence to show what happened to the" car crusher.

The plaintiff disagrees, insisting that Harry Powell's testimony furnishes enough evidence of "physical loss" to derail the missing property exclusion. The plaintiff believes that Powell's deposition testimony demonstrates all of the following facts: (1) the location of the crusher was known before and at the time of the theft; (2) on the date of the claimed loss, First Class employees went to retrieve the machine, but could not find it in the place where it was kept; (3) when the crusher could not be located, "it was determined to have been stolen, and a police report was filed"; (4) the crusher was "removed in such a way as to avoid capture on security cameras and even satellite imaging didn't help"; (5) the "fencing where the car crusher was stolen was falling down and the gate to the yard was unreliable"; (6) "opportunity for the thieves was presented when the crusher had to be moved for the installation of a new gravel lot"; and (7) "a person involved with moving the car crusher, that could be involved with the theft, was identified."

It is fair to say that the record supports all of those assertions. It also must be said, however, that none of those facts constitutes "physical evidence" of how the car crusher disappeared. The term "physical evidence" is not defined in the policy, and the cases do not elaborate on the term. But the common dictionary understanding is that it is the species of evidence that "itself plays a direct part in the incident in question," as in "real evidence." *See* Black's Law Dictionary, *Evidence* (10th ed. 2014). It consists of tangible proof of "the existence of an alleged fact." *Ibid.* The

plaintiff has not suggested an alternate meaning for the term, or argued that it is ambiguous. *See Allstate Ins. Co. v. Goldwater*, 163 Mich. App. 646, 648-49, 415 N.W.2d 2, 4 (1987) (stating that a contract is unambiguous if it "fairly admits of but one interpretation"). Therefore, the Court's task is to determine as a matter of law if the evidence in the record provides some physical manifestation of what happened to the equipment. *See In re Landwehr's Estate*, 286 Mich. 698, 702, 282 N.W. 873, 874 (1938) ("'Where the language of the writing is not ambiguous the construction is a question of law for the court on a consideration of the entire instrument.'" (quoting *Griffin Mfg. Co. v. Mitshkun*, 233 Mich. 640, 642, 207 N.W. 814, 814 (1926))).

Powell testified that at some point he noticed that a section of fence near where the crusher was stored had "blown down," but that, by the time he went to the yard on June 1, 2012, the fence had been put back up. However, none of the proffered testimony describes any positive physical indication that the fence was pulled down or removed by anyone in the course of stealing the crusher. Moreover, the facts that the fence was down and that a gate at the facility was "unreliable" only suggest that the crusher "could have been" stolen, not that it was.

Powell testified that he asked about security camera footage and that searches of Google maps images were done, but none revealed any information about when the crusher was last on the lot, when it was removed, or how. Powell testified that, to his knowledge, there were no other physical security measures to prevent the removal of the trailer. He also testified that when he went down himself to where the crusher had been stored, there was "basically no sign of it ever being there." This evidence of absence, however, does not cure the plaintiff's absence of physical evidence.

The plaintiff also contends that it has identified an employee of Sampson's named Glenn Church who could have moved the crusher when the new gravel lot was put in. But Powell also testified that Sampson did not identify who — if anyone — actually moved the machine; Sampson only told Powell that someone "must have moved it." Powell has not identified any witness who personally saw the machine being moved by anyone, or who saw it located at any place other than the usual storage location at the salvage yard, and he has not pointed to any actual physical traces of the machine having been moved by anyone. The conclusion that someone "must have moved it" may be a reasonable inference from the fact that the crusher indisputably no longer is where it was, but that does not constitute "physical evidence" establishing that it was stolen, or who, if anyone, might have been "involved" in stealing it. At best, it establishes that the car crusher was missing and *presumed* stolen, but nothing more.

Because there is no physical evidence showing what happened to the car crusher, the unambiguous insurance policy language allows defendant EMC to refuse to pay for its "unexplained or mysterious disappearance." The Sixth Circuit, on nearly identical facts, reached the same conclusion when applying Michigan law to a policy with the same exclusion. *C.T.S.C. Boston, Inc. v. Continental Ins. Co.*, 25 F. App'x 320, 324 (6th Cir. 2001) ("The policy language at issue states: 'We will not pay for loss of or damage to . . . . [p]roperty that is missing, but there is no physical evidence to show what happened to it, such as shortage disclosed on taking inventory.'"). As the court of appeals explained in that case:

> To date, CTSC has produced no physical evidence to show what happened to the missing laptops. As the district court noted, CTSC officials do not know when the laptops were taken from the Burlington facility or by whom — indeed, CTSC's officers do not know what happened to the missing laptops, although their inference that the laptops were stolen appears to be the only reasonable one.
> . . .

> CTSC has not proffered a reasonable interpretation of "physical evidence" different from that advanced by Continental. Instead, . . . CTSC argues that it "has demonstrated that it once possessed the laptops, that the laptops cannot be found, and that the laptops were removed without CTSC's consent." In other words, CTSC argues that its description of the laptops as "missing" is, in effect, "physical evidence" of what happened to them. But this interpretation of the exclusion term as a whole is not reasonable as it conflates "physical evidence" of theft with the mere fact that the property is "missing." Under this interpretation, there would always be "physical evidence" of what happened to missing property because the insured's mere description of the property as "missing," and presumed stolen, would count as "physical evidence" of what happened to it. This line of reasoning leads to the paradoxical conclusion that all missing property would be covered by the policy when there is no physical evidence of what happened to it, based on the "missing property" exclusion itself.

*Continental Insurance*, 25 F. App'x at 324-26.

Similarly, in *Banner Lumber Co. v. Indiana Lumbermen's Mutual Insurance Co.*, No. 07-13180, 2009 WL 3462510 (E.D. Mich. Oct. 22, 2009), the district court, again applying Michigan law to a coverage exclusion identical to that used in the policy here, held that, despite the fact that the plaintiff's supervisor saw some lumber being stolen one particular night, there was no "physical evidence" to show that a vast quantity of additional lumber that also was found to be missing was stolen in the course of an alleged, but entirely unsubstantiated, "ongoing theft ring":

> The Plaintiff has produced independent evidence to account for the lumber that was stolen on the night of January 10, 2006. Thus, it can use inventory calculations to establish the amount of lost lumber which is attributable to the events of that evening. On the other hand, the Plaintiff has been unable to produce any other physical evidence which explains why the remaining portion — indeed, the great bulk — of the lumber is missing. More specifically, the Plaintiff has no physical evidence to show what — if anything — happened prior to the night of January 10, 2006. Hence, the Plaintiff's situation falls squarely within the "Missing Property" exclusion of the parties' insurance contract.

*Banner Lumber*, 2009 WL 3462510, at *5-6.

The plaintiff here has not offered any reasoning or authority to distinguish the holdings in *Continental* and *Banner Lumber*, which are squarely on point and concerned nearly exactly the same

facts and policy terms. Because the "missing property" exclusion is triggered by the absence in the record of physical evidence of what happened to the car crusher, the defendant is entitled to summary judgment on the plaintiff's breach of contract claim.

### III.

The undisputed facts in the record establish that the defendant has carried its burden of showing that the "missing property" exclusion applies to absolve the defendant from paying for the loss claimed by the plaintiff in its complaint.

Accordingly, it is **ORDERED** that the defendant's motion for summary judgment [dkt. #10] is **GRANTED**.

It is further **ORDERED** that the plaintiff's motion for summary judgment [dkt. #11] is **DENIED**.

It is further **ORDERED** that the complaint is **DISMISSED WITH PREJUDICE**.

                                      s/David M. Lawson
                                      DAVID M. LAWSON
                                      United States District Judge

Dated: December 15, 2016

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on December 15, 2016.

                            s/Susan Pinkowski
                            SUSAN PINKOWSKI